```
GCLKDURS                        SENTENCE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              16 CR 104 (RMB)

HOSTO DURAN,

                Defendant.

------------------------------x
                                            New York, N.Y.
                                            December 21, 2016
                                            10:05 a.m.

Before:

                    HON. RICHARD M. BERMAN,

                                            District Judge


                           APPEARANCES

PREET BHARARA,
     United States Attorney for the
     Southern District of New York
ELI MARK
     Assistant United States Attorney

PATRICK JEROME BRACKLEY
     Attorney for Defendant


ALSO PRESENT:

FRANCISCO OLIVERO, Spanish Interpreter
```

1           (Case called)
2           THE COURT:  As you know, we are on today for
3    sentencing.
4           THE INTERPRETER:  My apologies, your Honor, the
5    interpreter thought that the equipment was working.
6           (Pause)
7           MR. BRACKLEY:  Judge, before that, the interpreter has
8    an extra set of headphones for one of the defendant's family
9    members, and I seek your permission --
10          THE COURT:  Sure.
11          MR. BRACKLEY:  Thank you, Judge.
12          (Pause)
13          THE INTERPRETER:  Thank you.
14          THE COURT:  Is Mr. Duran able to understand these
15   proceedings with the help of the interpreter?
16          THE DEFENDANT:  Yes.
17          THE COURT:  We are here for sentencing today.  The
18   rules of sentencing have changed.  The sentencing guidelines
19   are no longer mandatory and instead what we do, as sentencing
20   judges, is to look at the factors found at 18, United States
21   Code, Section 3553(a), which I've done before taking the bench
22   today.  They include the nature and the circumstances of the
23   offense as well as the history and characteristics of the
24   defendant.  We try to accomplish these objectives reflecting
25   the seriousness of the offense, promoting respect for the law,

1  providing just punishment, affording adequate deterrence to

2  criminal conduct, protecting the public from further crimes,

3  providing the defendant with any needed educational or

4  vocational training or medical care or other correctional

5  treatment in the most effective manner.

6        In doing all that, we look at the kinds of sentences

7  available, including the kinds of sentence and the sentencing

8  range established under the sentencing guidelines, even though

9  these are no longer mandatory; we also review any policy

10 statements issued by the United States Sentencing Commission

11 that may be applicable; we seek to avoid unwarranted sentence

12 disparities among similarly situated defendants; and, in

13 appropriate cases, to provide for restitution.

14       We start with a guidelines analysis.  Here, the

15 guideline range is 70 months to 87 months of incarceration,

16 based on an offense level of 27 and a criminal history category

17 of 1.

18       In reviewing the factors at 18, United States Code,

19 Section 3553(a), these stand out as most relevant:

20       Mr. Duran pled guilty on September 14, 2016, to a

21 conspiracy to distribute and possess with the intent to

22 distribute heroin and cocaine.  That was done before Magistrate

23 Judge Gorenstein.  The guilty plea was accepted by me on

24 September 20.

25       Mr. Duran pled guilty pursuant to a plea agreement

1  which was dated July 27, 2016, in which there was a stipulated
2  guideline range of 70 to 87 months, based on an offense level
3  of 27 and a criminal history category of I.
4           Mr. Duran is 40, he's married and has two children.
5  He was born in the Dominican Republic but became a United
6  States naturalized citizen in 2012.  He has some college
7  education.  He has been employed in the past working for
8  Quik Park, where he made copies, it is said, of customer credit
9  cards for his own personal use while in that employment.  He
10 also has some charges pending in state court.
11          Mr. Duran was initially on pretrial release but was
12 remanded by the Court after he was arrested on charges of
13 identity theft.  He's been in custody now for approximately two
14 months.
15          The presentence report says that there was a court
16 date of 11/22/16 scheduled.  He was remanded in federal custody
17 at that time, so it's unclear what took place in state court.
18 Perhaps during the course of the proceedings somebody might
19 know the answer to that.
20          Mr. Duran has also been an Uber driver, and this
21 offense that we're here about occurred during his employment as
22 an Uber driver.
23          Prior to that employment, he worked for various car
24 services and limousine companies.  He also has prior employment
25 at a gym, a furniture store, and a clothing company.

1            By letter dated November 29, 2016, defense counsel

2   requests a no more than a bottom-of-the-guideline sentence.

3   Among other things, defense counsel notes the strong family

4   ties the defendant has as well as his strong work history.  And

5   that is remarkably demonstrated in the materials submitted

6   particularly by family and friends of Mr. Duran in the form of

7   letters to the Court.

8            Defense counsel states that despite his minimal

9   education and few marketable skills, Mr. Duran has exhibited

10  considerable industry since his arrival here in 2000 in search

11  of a better life.  Defense counsel states that despite his

12  recent misstep under pretrial supervision, Mr. Duran's

13  consistent industry, strong family ties, acceptance of

14  responsibility, and absence of substance abuse history indicate

15  great potential for rehabilitation.  They likewise suggest --

16  this is a quote from defense counsel -- they likewise suggest

17  that a low sentence would neither deprecate the seriousness of

18  the offense nor undermine respect for the law and would

19  therefore be just.

20           Defense counsel, as I mentioned, submitted letters

21  from the defendant, from his wife, his former wife, his

22  children, sisters, nephews, nieces, other relatives.  Each of

23  these letters described the defendant as a good, hardworking

24  man, who takes care of his family and is a man who was greatly

25  affected by the passing of his father.

Case 1:16-cr-00104-RMB   Document 74   Filed 01/20/17   Page 6 of 16    6
GCLKDURS                    SENTENCE

1            By letter dated December 7, the government notes that
2    defendant's conduct in this case was serious as he "principally
3    acted as the driver for the coconspirators to pick up narcotics
4    from individuals working with a Mexican cartel, deliver the
5    drugs to potential customers and pick up narcotics proceeds
6    from customers."
7            The government requests a sentence within the
8    stipulated guideline range but also asks the Court to consider
9    the following -- that is to say, the government acknowledges
10   that the defendant qualifies for safety-valve treatment and
11   advises the Court that following his arrest, the defendant
12   promptly informed the government of his willingness to
13   cooperate.  The government advises the Court that the defendant
14   proffered information about other narcotics traffickers in the
15   United States and that he attempted, although unsuccessfully,
16   to obtain a portion of narcotics proceeds that was on the
17   street.
18           Although the government determined that a cooperation
19   agreement was not warranted, the government believes that the
20   defendant provided truthful information about individuals he
21   believed to be trafficking in narcotics.  Additionally, the
22   government notes that the defendant has identified certain
23   aspects of his personal background and circumstances that also
24   warrant consideration at sentencing.
25           So I've also reviewed the presentence investigation

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   report dated December 6, 2016, counsel's letter of November 29,
2   and the government's December 7th letter.
3           Counsel, have you and Mr. Duran had the opportunity to
4   read and discuss the presentence investigation report along
5   with the addendum and sentencing recommendation?
6           MR. BRACKLEY:  Yes, your Honor.
7           THE COURT:  Mr. Duran, have you been over that
8   presentence report with your counsel?
9           THE DEFENDANT:  Yes.
10          THE COURT:  Do either of you have any objections to
11  the content of that report?
12          MR. BRACKLEY:  None, Judge.
13          THE COURT:  Mr. Duran, any objections from you to the
14  content of the presentence report?
15          THE DEFENDANT:  No.
16          THE COURT:  So I'll return that report to the
17  probation department.
18          I'm happy to hear from defense counsel at this time,
19  from Mr. Duran, and from the government.
20          MR. BRACKLEY:  Thank you, Judge.
21          Good morning, your Honor.
22          THE COURT:  Good morning.
23          MR. BRACKLEY:  As I listened to your recitation of the
24  nature and history of the case, Judge, I'm humbled by the fact
25  you hit every single major point, especially the fact that

1   Mr. Duran came to this country from a very large family, was
2   law-abiding the entire time, married, was in the process of
3   raising his children, and then in a very short period of time,
4   in essence, threw it all away by getting arrested in what you
5   probably see every day are countless drug conspiracies and
6   everybody's minor or major participation in what in the
7   beginning looks like an easy way to make money and in the end
8   ends up putting a man in jail who has never been incarcerated a
9   day in his life, who is now looking at multiple years in jail
10  under the guidelines at least.
11          And, of course, Judge, we are here sheepish with this
12  new arrest situation because, generally, we like to stand at
13  sentences and talk about the law-abiding life and all of the
14  wonderful things that somebody's going to do but, as you well
15  know, in the process of this case, he was arrested on a
16  misdemeanor.  And I will report to the Court for your
17  consideration that he was working at a garage.  There were some
18  individuals there who were creating credit cards, and he was
19  arrested trying to go to a restaurant and spend $12 on one of
20  those cards or some minor amount of money, not that that
21  excuses it but he promptly began to discuss it with the
22  detectives and he has proffered in the state court.  And that
23  case will, I believe, Judge, be resolved with a disorderly
24  conduct, upon him identifying whoever it was that was there
25  doing that.

1           THE COURT:  Do you represent him there too?

2           MR. BRACKLEY:  I do, your Honor.

3           As you can see, his family is in court.  Those members
4   who you have discussed who have written letters -- his wife,
5   his prior wife, his cousins, his children, his family -- and
6   they have been with him since the very beginning.  That has
7   always, for me, Judge, even as his lawyer -- as you point out,
8   I stuck with him in the state court -- has been the most
9   troubling aspect of this, is that basically it halted every
10  aspect of their lives.  And then I ended up down in a precinct
11  with his credit card case, and I really don't know what to tell
12  you about that except I think at the time he was working, it
13  became part and parcel of what it was to work there but he
14  immediately fessed up to it.

15          So what I would ask, Judge, is that, based upon all of
16  that and what I believe is his minimal role in the underlying
17  offense, the sentence I would recommend, Judge, is 36 months.
18  I believe that that would be a period of incarceration.  Some
19  lawyers would ask for probation but I think, Judge, it's a
20  significant conspiracy and I think, in fairness, in light of
21  the guidelines, that is a reasonable sentence.

22          THE COURT:  Mr. Duran, do you want to make any
23  comment?

24          THE DEFENDANT:  Yes.

25          May I stand up?

1          THE COURT:  You can if you wish or you can remain
2    seated, as long as you talk into the microphone.
3          THE DEFENDANT:  May I start?
4          THE COURT:  Yes.
5          THE DEFENDANT:  I would like to thank your Honor and I
6    would like to apologize to the City of New York, which is my
7    city and I love.  I'm sorry for the bad acts I committed.  I
8    apologize to my family and my children, to this country and to
9    anyone affected by this case, to my children that I love.
10         Thank you, sir.
11         THE COURT:  Counsel for the government?
12         MR. MARK:  Your Honor, we rest on our December 7th
13   submission to the Court.
14         THE COURT:  Okay.  So I am going to adopt the findings
15   of fact in the presentence investigation report unless defense
16   counsel has any further objection or any objection to that.
17         MR. BRACKLEY:  No, Judge.
18         THE COURT:  Or any objection from Mr. Duran?
19         THE DEFENDANT:  No.
20         THE COURT:  Or from the government?
21         MR. MARK:  No, your Honor.
22         THE COURT:  Okay.
23         Let's move to what the proper sentence, a fair
24   sentence, should be.  The most remarkable aspect of this case
25   is that -- and counsel is right, I have had hundreds, I guess,

of conspiracies, of drug conspiracies -- the huge difference is that most, almost all, of the defendants do not have strong family support and ties, and so their behavior is actually a little more understandable, actually, because they come from usually chaotic backgrounds and family situations.  This one is so stable and supportive and it's quite remarkable.

The second significant difference is that, in all of those other cases, or most of them, the defendants don't work, and so their life is centered around drug activity or unlawful behavior.  And here, Mr. Duran always has had productive employment.  So you have to say to yourself, why does it happen in this case?  That's the part that is elusive to me.  But anyway, I think everybody gets what I'm saying.  I don't know if there is really an explanation but that's the curious aspect of the case to me.

Here's what I plan to do, and then I will impose the sentence:  I am going to go outside the sentencing guidelines, below it.  I don't think it's appropriate to go as far as defense counsel has asked, but I do think I can be comfortable with a sentence of 52 months of incarceration instead of 70 months.  The offense level is 27; the criminal history category is I.  That would be followed by three years of supervised release -- hold on one second.

(Pause)

THE COURT:  So I intend to impose a sentence of three

years of supervision following release from incarceration. That supervision would be subject to the mandatory conditions: That defendant not commit another federal, state or local crime; that he not illegally possess a controlled substance; that he not possess a firearm, dangerous weapon or destructive device; and that he refrain from any unlawful use of a controlled substance; he would be required to submit to one drug test within 15 days of placement on supervised release and at least two unscheduled drug tests thereafter, as may be directed by the probation officer.

In addition, he is required to comply with what are called the standard conditions, plus these:

That he will be supervised in his district of residence when supervised release comes into play;

He will be required to report to the probation department within 48 hours of release from custody. And here I'm going to add that, if this is deemed necessary or appropriate or helpful by the probation department, I'm going to also suggest that they have him, Mr. Duran, participate in weekly therapeutic counseling by a licensed therapist. He may be required to contribute to the cost of services rendered, as by a co-payment, in an amount to be determined by the probation officer based on ability to pay or availability of third-party payment. So this is within the discretion of the probation department.

1       I am not imposing a fine.  None is recommended in the
2  presentence materials.
3       I am not imposing restitution.  There is no victim
4  within the meaning of 18, United States Code, Section 3663 or
5  3663(a).
6       I am imposing a $100 special assessment, which is
7  mandatory under 18, United States Code, Section 3013.
8       The reasons for this sentence are, notwithstanding
9  that the offense level is 27 and the criminal history category
10 is I and that the sentencing guideline range, albeit not
11 mandatory, is 70 to 87 months of incarceration, I believe that
12 going lower than the low end of the guideline range, to 52
13 months of incarceration, which constitutes a significant break,
14 so to speak, for the defendant, I think it's appropriate,
15 having considered his history and characteristics, the nature
16 and circumstances of the crime, particularly his strong family
17 ties and relations, and his employment history.  I also think
18 this sentence reflects the seriousness of the offense, promotes
19 respect for the law, provides just punishment, affords adequate
20 deterrence to criminal conduct, and protects the public from
21 further crimes.  It also suggests and provides needed
22 correctional treatment or medical care, in this case the
23 suggestion of mental health counseling, in the most effective
24 manner.
25       So that's what I propose to do and I will do it unless

1    defense counsel has anything further to add at this time.
2             MR. BRACKLEY:  No, Judge.  Thank you.
3             THE COURT:  Anything further from Mr. Duran?
4             THE DEFENDANT:  No.
5             THE COURT:  How about from the government?
6             MR. MARK:  No, your Honor.
7             THE COURT:  Then I would ask Mr. Duran to please stand
8    and I will impose the sentence.
9             The guideline range is 70 to 87 months of
10   incarceration, but having considered the factors at 18, United
11   States Code, Section 3553(a), it is my judgment that the
12   defendant, Hosto Duran, be committed to the custody of the
13   Bureau of Prisons to be imprisoned for a term of 52 months,
14   followed by three years of supervised release subject to the
15   terms and conditions that I mentioned and incorporate here by
16   reference; no fine; no restitution; $100 special assessment,
17   which is due immediately.
18            The reasons for this sentence and the significant
19   departure downward from the guidelines is that I believe this
20   sentence is compatible with 18, United States Code, Section
21   3553(a).
22            Does either counsel know of any legal reason why the
23   sentence should not be imposed as so stated?
24            MR. MARK:  No, your Honor.
25            MR. BRACKLEY:  No, Judge Berman.

1            THE COURT:  Then I hereby order the sentence to be
2    imposed as so stated.
3            Mr. Duran, to the extent that you have not already
4    waived your appeal rights -- and now I'm talking about the plea
5    agreement dated July 27, 2016, which in fact contains several
6    waivers of the right to appeal.  The agreement was signed on
7    September 14, 2016, and in it you agree that you would not file
8    a direct appeal.  You also agreed that you would not bring a
9    collateral challenge, including, but not limited to, an
10   application under 28, United States Code, Sections 2255 and/or
11   2241, and you also agreed not to seek a sentence modification
12   under 18, United States Code, Section 3582(c) of any sentence
13   that is within or below the guideline range of 70 to 87 months,
14   and, of course, this sentence is below that, so these waivers
15   of your various rights to appeal do apply.
16           You also in that plea agreement waived the right to
17   appeal any term of supervised release that is less than or
18   equal to the statutory maximum, which is lifetime, and I have
19   imposed three years, so that clearly triggers that waiver of
20   that appeal right as well.
21           From the government, any open aspects of the case
22   which you would like to resolve at this time?
23           MR. MARK:  There is an underlying information, so at
24   this time the government moves to dismiss any open counts, your
25   Honor.

1       THE COURT:  Okay.  I will grant that application.
2       And then, starting with the government, did you wish
3  to add anything to today's sentencing proceeding?
4       MR. MARK:  No, your Honor.
5       THE COURT:  How about defense counsel?
6       MR. BRACKLEY:  No, Judge.  Have a fine holiday, sir.
7       THE COURT:  You too, you too.  I think that concludes
8  our work for today.
9       Mr. Duran, I wish you the very best of luck going
10 forward.  Thanks very much.
11      MR. BRACKLEY:  Thank you.
12      MR. MARK:  Thank you, your Honor.
13      THE COURT:  Counsel, did you have any thought about
14 the location of confinement?
15      MR. BRACKLEY:  Yes, Judge.  I did request in my
16 memorandum, to the extent that this Court is able to do that,
17 to recommend somewhere in the Northeast.
18      THE COURT:  Close to New York City?
19      MR. BRACKLEY:  Yes, Judge.
20      THE COURT:  So I'll make that recommendation.
21      MR. BRACKLEY:  Thank you, Judge.
22                         * * *
23
24
25